**John CUIFFO**

v.

**The UNITED STATES.**

No. 199–54.

United States Court of Claims.
March 1, 1955.

Carl L. Shipley, Washington, D. C., for plaintiff. Samuel Resnicoff, New York City, was on the brief.

Kathryn H. Baldwin, Washington, D. C., with whom was Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

WHITAKER, Judge.

Plaintiff was employed as a blocker and bracer at the New York Port of Embarkation, Brooklyn, New York, at an hourly wage of $1.67 for daytime work, and $1.83 an hour for night-time work. He was discharged, effective September 30, 1952, but was restored to duty on August 3, 1953. He sues for his pay in the meantime.

Defendant defends on the sole ground that plaintiff has not exhausted his administrative remedy.

Plaintiff was discharged because he took from the premises for his own use some lumber that had apparently been discarded.

Since this case is before us on motions for summary judgment, we do not know all the facts, but we are under the distinct impression that plaintiff did not realize he was doing anything wrong when he took the lumber. He readily admitted he had taken it, and volunteered the information that he had done so on other occasions. He says that on many occasions he had seen similar lumber burned in the incinerator or given away to nearby householders, and that he thought the Government did not want it and, hence, he saw no reason why he should not take it.

Before dismissal he was given an opportunity to show cause why he should

not be. He did not avail himself of this opportunity and, accordingly, on September 18, 1952, he was notified that he would be separated from the service, effective September 30, 1952. The letter of separation was signed by the Chief of the Civilian Personnel Branch of the Personnel and Administration Division of the Port of Embarkation.

He was notified that he had the right to appeal from the decision "by submitting a written request for review to the Commanding General, New York Port of Embarkation * * *." He was also advised that "As a veteran, you may file written appeal under section 14 of the Veterans Preference Act of 1944 [5 U.S. C.A. § 863], with the Regional Director, United States Civil Service Commission, * * * within ten (10) calendar days after the effective date of your separation."

But, after so advising him, he was warned:

"You may appeal directly to the United States Civil Service Commission; however, a grievance will not be considered under Department of the Army regulations while an appeal on the same subject is pending with the Civil Service Commission, nor will you have the right to further consideration of your grievance under Department of the Army regulations after a decision has been rendered by the Civil Service Commission. You are also informed that your election to utilize the Department of the Army grievance procedure may preclude your right to appeal to the Civil Service Commission under Section 14 of the Veterans Preference Act of 1944, inasmuch as such appeals must be submitted within ten (10) days after the effective date of the adverse action."

Plaintiff elected to appeal to the Commanding General, New York Port of Embarkation. The Commanding General approved the decision of the Chief of the Civilian Personnel Branch. Plaintiff then requested a review by the Chief of Transportation, Washington, D. C. His request was referred to the Civilian Personnel, Grievance Review Board.

This Board, in view of plaintiff's "enviable record at the Port" and of his "good reputation for honesty, sobriety, integrity, and veracity," recommended that plaintiff "be restored to duty as of a current date in a position of the same seniority, status, and pay to that which he occupied prior to his removal, and that the intervening period from his removal to his restoration be regarded as a non-pay status and just punishment for his attempt to remove Government property without proper authority."

Plaintiff did not appeal to the Civil Service Commission. For his failure to do so, defendant says he is precluded from suing in this court.

Under the facts of this case, we do not think plaintiff is so precluded.

■ Wherever the statute prescribes an administrative remedy to be followed before resort is had to the courts, that remedy of course must be followed to its ultimate conclusion. The Veterans' Preference Act, however, did not require an appeal to the Civil Service Commission prior to bringing suit for a deprivation of his rights under that Act. The Act said a "preference eligible" should not be discharged "except for such cause as will promote the efficiency of the service", that he should be advised in advance of the reasons for his discharge and be given an opportunity to answer, and "shall *have the right* to appeal to the Civil Service Commission from an adverse decision of the administrative officer so acting, such appeal to be made in writing within a reasonable length of time after the date of receipt of notice of such adverse decision". (Italics ours.)

It will be noted that the Act is permissive only, and does not require an appeal as a condition precedent to suit. The regulations promulgated under the Act are also permissive, and not mandatory.

■ Where an Act requires resort to administrative procedure before bringing suit, either directly or indirectly, of course that procedure must be followed, but where an administrative remedy is provided and it is not expressly or impliedly required that it should be followed before suit is brought, it is at least doubtful that a claimant is required in all cases to pursue the administrative remedy as a prerequisite to suit. Under the facts of this case we do not think he was so required.

In the cases relied on by defendant, the administrative procedure was clearly required before suit.

In Aircraft and Diesel Equipment Corp. v. Hirsch, 331 U.S. 752, 67 S.Ct. 1493, 91 L.Ed. 1796, there was involved the necessity of an appeal to the Tax Court in renegotiation proceedings. There is no doubt that in such a case a party was obliged to appeal to the Tax Court. Indeed, the Second Renegotiation Act, 50 U.S.C.A.Appendix, § 1191, provided that the decision of the Tax Court should be final and conclusive and that no court or agency should have the power to review its decision.

Renegotiation proceedings were also involved in Myers v. Bethlehem Shipbuilding Co., 303 U.S. 41, 58 S.Ct. 459, 82 L.Ed. 638.

In ship requisition cases a plaintiff is obliged to pursue his administrative remedy before he can resort to the courts because the Act, 46 U.S.C.A. § 1242, provides that the Maritime Commission shall make an award of just compensation and shall pay plaintiff the award, or, if the award is unsatisfactory to the shipowner, he shall then be paid 75 per cent of the award and shall be entitled to bring suit for the balance of just compensation. In these cases it is clear that the administrative procedure is a condition precedent to suit.

■ The law makes the filing of a claim for refund of taxes a condition precedent to suit. There are quite a number of other classes of cases where the administrative remedy must be exhausted before resort can be had to the courts; but in the present case the statute does not say that an appeal to the Civil Service Commission must be had before suit can be brought. The Act and the regulations of the Civil Service Commission give a person aggrieved the *right* to file an appeal with the Civil Service Commission, but they do not require that he should do so before he can bring suit.

Where the right to pursue an administrative remedy is given, but not required, it is at least within the discretion of the courts to entertain a suit before the administrative procedure has been exhausted.

In United States v. Abilene & Southern Railway Co., 265 U.S. 274, 44 S.Ct. 565, 567, 68 L.Ed. 1016, the Interstate Commerce Commission moved to dismiss the suit of the Railway Company because it said it had not exhausted its administrative remedy, since it had not taken an appeal from the decision of Division 4 of the Commission to the entire Commission. Mr. Justice Brandeis, speaking for the court, said that the order of Division 4 under the Interstate Commerce Act, 49 U.S.C.A. § 1 et seq., had " 'the same force and effect * * * as if made * * * by the Commission, subject to rehearing by the Commission.' " Although it appeared that plaintiff had the right to appeal to the entire Commission and had not exhausted its administrative remedy until it had done so, the Supreme Court said that, nevertheless, the Court had jurisdiction to entertain the suit, citing Prendergast v. New York Telephone Co., 262 U.S. 43, 48, 49, 43 S. Ct. 466, 67 L.Ed. 853, and Chicago Rys. Co. v. Illinois Commerce Commission, D. C., 277 F. 970, 974. The Court said, 265 U.S. at page 282, 44 S.Ct. at page 567:

" * * * Whether it [the Court] should have denied relief until *all possible* administrative remedies had been exhausted was a matter which called for the exercise of its judicial discretion. We cannot say

that, in denying the motion to dismiss, the discretion was abused." [Italics ours.]

In Moore v. Illinois Central Railroad Co., 312 U.S. 630, 634 et seq., 61 S.Ct. 754, 85 L.Ed. 1089, there was involved the necessity for a discharged person to pursue his administrative remedies under the Railway Labor Act, 44 Stat. 577, as amended, 48 Stat. 1185, 45 U.S.C.A. § 151 et seq. Section 153(i) of 45 U.S.C. provides that disputes growing out of grievances "shall be handled in the usual manner up to and including the chief operating officer of the carrier designated to handle such disputes; but, failing to reach an adjustment in this manner, the disputes may be referred by petition of the parties or by either party to the appropriate division of the Adjustment Board with a full statement of the facts and all supporting data bearing upon the disputes."

The Supreme Court called attention to the fact that section 153(i) of the Railway Labor Act provides that the dispute "may" be referred to the Adjustment Board, and that it was significant that a prior Act had provided that the dispute "shall" be referred to the Adjustment Board. Accordingly, the Court held that it was not obligatory on a person aggrieved to appeal to the Adjustment Board as a condition precedent to suit.

In Levers v. Anderson, 326 U.S. 219, 66 S.Ct. 72, 90 L.Ed. 26, it was alleged that the plaintiff had not exhausted his administrative remedy because he had not filed a motion for reconsideration of an order of the supervisor of the Alcohol Tax Unit of the Bureau of Internal Revenue of the United States revoking plaintiff's permit to operate a wholesale liquor business. The Treasury regulations provided in part as follows:

"(a) * * * Within 20 days after an order is made by the Commissioner or district supervisor revoking a basic permit, the permittee may file an application with such Commissioner or district supervisor, for a reconsideration of such order, on one or more of the following grounds:

"(1) The order is contrary to law, or

"(2) Is not supported by the evidence, or

"(3) Because of newly discovered evidence which the permittee, with due diligence, was unable to produce at the hearing."

The Court held that, although plaintiff had the right to file such a motion, it was not required to do so as a prerequisite to suit.

See also Smithmeyer v. United States, 147 U.S. 342, 356–358, 13 S.Ct. 321, 37 L.Ed. 196.

We have held a number of times that the statute of limitations is not tolled while a party is seeking redress before an administrative body. This ruling applies only to those cases where pursuit of an administrative remedy is not required. Where it is required, the statute is tolled, since the party cannot sue until the administrative remedy has been exhausted. Where he is not required to pursue the administrative remedy, the statute is not tolled while he is doing so, as we have held a number of times. If we hold that a person must pursue his administrative remedy as a prerequisite to suit, although not required, then we must overrule our decisions holding that the statute is not tolled while he is doing so.

In Martilla v. United States, 118 Ct. Cl. 177, we held that under the facts of that case a veteran was required to exhaust his administrative remedy before resorting to the courts; but the case we have before us differs from the Martilla case, in that this veteran was advised by the Chief of the Civilian Personnel Branch who discharged him that he had the election of appealing to the Civil Service Commission, or of appealing to higher authorities in the Army. He was not advised that his appeal to higher authorities in the Army would necessarily deprive him of the right to appeal to the

Civil Service Commission, but he was warned that it might do so. He must have thought that he had lost his right to appeal to the Civil Service Commission, because he did not do so, although he had been quite diligent in pursuing his remedy through Army channels; after the Commanding General at the Port of Embarkation had affirmed the decision of his immediate superior, he went to the length of requesting a review in Washington by the head of the Transportation Service, and a hearing was had before the Civilian Personnel Grievance Review Board. Having pursued the matter this far, it would seem that plaintiff in all probability would have appealed to the Civil Service Commission had he not been informed by his superiors that his right to so appeal had probably expired.

There was reasonable ground for him to believe that the ten days, within which the regulation required that an appeal should be taken, had expired, since the regulations say that this ten days began to run "from the date he received his notice of the action to be taken." Indeed, it may be true that under the regulations plaintiff's right to appeal had expired. If so, he should not be penalized for having resorted to a remedy suggested to him by the officer discharging him, instead of having appealed directly to the Civil Service Commission.

Especially is this true in this case, because the Act and the regulations of the Civil Service Commission did not require an appeal to it, but merely granted the right of appeal. There is nothing in the Act to indicate that Congress meant to take away from a veteran or to circumscribe the right to sue in this court given him by 28 U.S.C. § 1491.

■ On the authority of the cases cited above, and in view of the fact that the Act and the regulations of the Civil Service Commission did no more than permit an appeal to it, but did not require it, and since the Chief of the Civilian Personnel Branch had indicated to plaintiff the probability that he had his election to appeal to the Civil Service Commission or to pursue his remedy through military channels, and since he diligently pursued the latter course, we do not think his failure to appeal to the Civil Service Commission precludes him from bringing suit in this court.

It results that defendant's motion for summary judgment must be denied.

Plaintiff has also filed a motion for summary judgment, which should be granted.

We think the punishment inflicted on plaintiff was out of all proportion to the offense. A committee was appointed to hear the case and make recommendations to the Commanding General, Port of Embarkation. A majority of this Committee recommended suspension without pay for 30 days. A minority recommended removal.

The Civilian Personnel Grievance Review Board, on appeal from the action of the Commanding General, said in its decision:

"In considering this case [the Board] * * * consulted the Department's Civilian Personnel Regulations CPRS-1, Appendix A containing a Table of Standard Penalties. Theft is listed therein as one of the offenses for which a one to ten days suspension or removal for a first offense is warranted. However, the penalty imposed will be determined 'primarily by value of the articles stolen, whether property was recovered, and employee's explanation.' "

The Board found that the value of the property was "at best", negligible; that the property had been recovered, it never having left the premises. But the Board found the employee's explanation unsatisfactory. It said:

"[He] attempted to justify his offense by the excuse that he thought the property was of little value to the Government and might otherwise be destroyed or given away."

Then the Board continued:

"Whether or not these circumstances existed, such an explanation is not satisfactory, in the opinion of the Grievance Review Board, to justify the appellant's acting, without approval, to ship Government property from the installation for private benefit."

From the foregoing, one would have supposed that the Board was about to decide that, while the plaintiff's action should not be condoned, yet a light penalty such as was permitted by the Table of Standard Penalties would be sufficient to teach the necessary lesson. It will be remembered that the table suggested for theft, first offense, suspension for from one to ten days, or removal. The Board concluded that removal, the penalty imposed by the agency in the first instance, was unjustified, and recommended that the plaintiff be restored to a position of the same seniority, status and pay which he occupied prior to his removal. It then said that the intervening period from his removal to his restoration should be regarded as a non-pay status and just punishment for his attempt to remove Government property without proper authority.

The Board's action, which was approved by the Acting Chief of Transportation, was, in effect, a sentence of suspension without pay for 320 days, or 32 times the maximum suspension penalty provided in the Table of Standard penalties, once it is concluded, as it was in this case, that removal was not justified.

We think that plaintiff's punishment was determined by accident, and not by a process of logical deliberation and decision. We have no doubt that, had the Review Board reached the plaintiff's case within 10 days or 30 days after his removal, they would have nullified his removal, as they did, and would have ordered his immediate reinstatement. But the Board did not reach the case for several months, and after it and the Acting Chief of Transportation had acted, the agency did not get around to reinstating the plaintiff for several more months.

This casual attitude toward the livelihood of a working man, found by the Review Board to be "a veteran of World War I, 55 years of age, who enjoyed an enviable record at the port" and having "a good reputation for honesty, sobriety, integrity and veracity" was a complete departure from fair dealing and tolerable personnel policy. We think it was so arbitrary and unfair that it should be set aside.

 We think the majority of the Committee which first heard the case reached about the right result, to wit, a suspension for 30 days without pay.

Judgment will be suspended until the incoming of a stipulation showing the amount due on account of plaintiff's wrongful suspension for 290 days. On failure of the parties to stipulate within 60 days, the case will be referred to a Commissioner to find the amount due computed in accordance with this opinion.

JONES, Chief Judge, and LARAMORE, MADDEN and LITTLETON, Judges, concur.