Michael G. **HEFFRON**

v.

The **UNITED STATES.**

No. 430–67.

United States Court of Claims.

Jan. 24, 1969.

Rufus W. Peckham, Jr., Washington, D. C., for plaintiff, Carl L. Shipley, Washington, D. C., attorney of record. Shipley, Akerman & Pickett, Washington, D. C., of counsel.

Edward Weintraub, Washington, D. C., with whom was Asst. Atty. Gen., Edwin L. Weisl, Jr., for defendant.

Before COWEN, Chief Judge, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT AND PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT

NICHOLS, Judge.

This is a suit for back pay lost by plaintiff when he was discharged from his position of contract administrator with the Department of Defense (DOD) Defense Supply Agency (DSA) in the New York Defense Contract Administration Services Region (DCASR). On September 9, 1966, the Director of the Contract Administration Directorate at DCASR notified plaintiff of a proposal to remove him from his position no sooner than 30 days from his receipt of the notice for violating DOD and DSA regulations regarding gratuities. The notice charged that plaintiff had accepted a case of liquor from a government contractor whose contract he had the responsibility of administering for DCASR. After responding to the charges, both orally and in writing, plaintiff received a notification of DCASR's decision to remove him as of November 4, 1966. This notice informed him of his right to appeal, which he did, and a hearing was held by the New York Regional Office of the Civil Service Commission (CSC) on March 14, 1967. On June 20, 1967, the Regional Director issued his decision in which he found that all of the procedural requirements for removal had been complied with, but that the cause for which plaintiff was removed had not been established. He recommended plaintiff be reinstated. On Agency appeal, the CSC Board of Appeals and review (BAR) rejected this recommendation and supported the Agency's action. Plaintiff then brought suit in this court, charging that the BAR's action in not adopting the Regional Director's decision was arbitrary and capricious and that the employing Agency was arbitrary and capricious and in error in discharging him. This case is before us on defendant's motion and plaintiff's cross-motion for summary judgment. We hold there are no issues of material fact, that plaintiff's dismissal was proper, that the BAR's action was supported by substantial evidence and was not arbitrary or capricious.

Plaintiff was charged with violating the following regulations:

(1) DOD personnel will not accept any favor, gratuity, or entertainment directly or indirectly, from any person, firm, corporation, or other entity which is engaged, or is endeavoring to engage in procurement activities or business transactions of any sort with any agency of the DOD * * *. DOD Directive 5500.7 (17 May 1963) paragraph VI. A.

(2) 1. The acceptance of luncheons, dinners, entertainment, and other forms of gratuities from Department of Defense contractors or prospective contractors is prohibited * * *.

2. Gratuities within the meaning of DOD Directive 5500.7 and this regulation include tangibles and intangibles, benefits, discounts, tickets, passes, transportation, accommodations or hospitality, given or extended to or on behalf of the recipient. DSA Regulation 5500.1 (25 November 1964) paragraph IV. B.

(3) An employee will not accept any favor or gratuity, directly or indirectly, from anyone conducting procurement activities or business transactions of any sort with DCASR if such favor or gratuity might influence, or might reasonably be interpreted as seeking to influence, the employee's impartiality. DCRN Regulation 1400.10

(1 November 1965) paragraph IV. 6.

The fact that plaintiff received some liquor is not in dispute, although there has been some disagreement as to whether he received a half or a whole case. At his hearing he repeatedly called what he received a case. However, whether plaintiff received a half or a whole case really makes no difference. Plaintiff denies that he violated any regulation, and he relies on the circumstances surrounding his receipt of the liquor to support his position. Some time during the week of December 25, 1965, plaintiff met, at a restaurant, two employees of the corporation whose contracts he administered. They took the keys to his car from him and placed the liquor in the trunk of the car. It was not until after they had separated that plaintiff knew how much had been placed in his car. Plaintiff swore that he believed it would be a bottle or two only and was told it was a farewell gift from the employees of the contractor, paid for with their personal funds. He had been notified of his transfer to the contracts of another contractor, and had communicated this information to this contractor's employees. There was no claim he customarily exchanged gifts or social amenities with these persons, that he reciprocated with any gifts on this occasion, or even enquired whom he should thank. After plaintiff found the case or half case he said nothing about it and it was not until he received the notice of proposed removal, months later, that the matter of the liquor again arose. Upon receipt of the removal proposal, plaintiff talked with his supervisor and admitted receiving the liquor and that it might be interpreted as an infraction of the gratuity regulations. He thought, however, in view of his years of service and his record that the penalty of removal was too harsh. He later responded to the charges in writing, denied that his receipt of the liquor violated any regulations and denied that he had ever been influenced in any manner.

Plaintiff had an adversary type of hearing and was confronted with most of the important witnesses against him. The hearing examiner admitted some affidavit evidence, and the CSC clearly had difficulty in according perfect due process because of its lack of subpoena power. Some witnesses who testified refused to be cross-examined except within their own narrow concepts of what was relevant. Plaintiff does not seem to have preserved any objection to the procedure per se for subsequent appellate review, and the hearing transcript supports defendant's motion insofar as it depends on the non-existence of any fact issue requiring trial. Burton v. United States, 186 Ct.Cl. ——, 404 F.2d 365 (decided December 13, 1968).

Plaintiff's primary contention is that the BAR was arbitrary and capricious in upholding the Agency's decision to remove him. He places great stress on the fact that the Regional Director, after a hearing, recommended that he be reinstated, finding that no cause for the removal of plaintiff had been established. The Director further found that there was no evidence as to who was responsible for ordering the liquor or who paid for it, and that there was no evidence to show that the liquor did not come from plaintiff's friends as a farewell gift. The BAR, on the other hand, found that the evidence in the record did support plaintiff's removal. None of the witnesses who were involved in the procurement and delivery of the liquor testified that it was a going away gift, but, on the contrary, none gave any reason why the liquor had been given plaintiff. The BAR found with evidentiary support that the liquor was ordered by the contractor, the liquor was delivered to the contractor, and the contractor was billed for the liquor. From this and the fact that there was no showing that the liquor was a farewell gift the BAR found that the receipt of the liquor violated the gratuity regulations. The BAR also found that plaintiff knew that he had violated the regulations when he

accepted the liquor; from these facts it found cause had been established for plaintiff's removal.

There might be much question whether acceptance of a gift from the contractor's employees, as individuals, would not itself violate the regulations, but the BAR findings did not turn on this. They squarely stated that the corporation bought the liquor, and this was, we hold, adequately proved despite the contrary finding of the Regional Director. The BAR did not believe plaintiff was told it was a personal gift of contractor's employees. Evidence to refute plaintiff's contention as to this seems sufficient though inferential. If he expected only a bottle or two as he said, why was he not given pause on finding so much larger a quantity? If he thought he was protected because individuals had purchased the gift, why did he admit on interviewing his supervisor that he had or might have violated the regulations? Would not the coy manner of delivering this gift have suggested that it was a transaction not fit for public observation? If he thought this was in the nature of an amenity, it is strange he did not himself observe the customary amenity of ascertaining who the donors were and thanking them. By his testimony he only learned it was "A gift from members of their [the contractor's] Contract Administration * * * and that it was not in the expense account * * *". It looks as if his main interest was that the corporate records should not show him as the donee.

■■■ This court will accord finality to an administrative decision to remove unless it is shown that it is arbitrary or not supported by substantial evidence. Morelli v. United States, 177 Ct.Cl. 848 (1966); Barnes, et al. v. United States, 170 Ct.Cl. 639, 643–644 (1965); Houston v. United States, 297 F.2d 838, 156 Ct.Cl. 38, cert. denied, 371 U.S. 815, 83 S.Ct. 27, 9 L.Ed.2d 56 (1962). We believe that the evidence in the record amply supports the BAR's conclusion that plaintiff violated the gratuity regulations. The regulations, with which plaintiff had every chance to be familiar after many years as a contract administrator for DOD, are quite clear. The DOD gratuity regulation provides that "DOD personnel will not accept any favor, gratuity, or entertainment * * * from any person, firm, corporation or other entity which is engaged * * * in procurement activities * * * with any agency of the DOD * * *". This regulation precludes any gift. The DSA regulation, which is based on the DOD regulation, precludes gifts or favors if they "might reasonably be interpreted as seeking to influence" the impartiality of an employee. While this standard might not appear to be as strict as that of the DOD regulation, plaintiff as an employee of both DOD and DSA was governed by both and we believe that it is within the discretion of the employing Agency to determine what "might reasonably be interpreted as seeking to influence" an employee's impartiality. Unless the agency abuses its discretion, which we do not believe it has done in this case, its decision must stand. The BAR in supporting the Agency's determination was not arbitrary and capricious.

■■■ Plaintiff also charges the BAR with bad faith in not considering the implications of the Agency's failure to forfeit the contractor's contract pursuant to 32 C.F.R. § 7.104–16.

* * * * * *

(a) The Government may, by written notice to the Contractor, terminate the right of the Contractor to proceed under this contract if it is found, after notice and hearing, by the Secretary or his duly authorized representative, that gratuities (in the form of entertainment, gifts or otherwise) were offered or given by the Contractor, or any agent or representative of the Contractor to any officer or employee of the Government with a view toward securing a contract or securing favorable treatment with respect to the awarding or amending, or the making

of any determinations with respect to the performing, of such contract * * *.

\* \* \* \* \* \*

This provision, which is inserted in government contracts, is permissive and not mandatory. It is within the sole discretion of the appropriate Secretary or his authorized representative to determine whether or not a contract should be forfeited. Doubtless, before taking such a drastic step, he would have to consider the need for the item contracted for, the availability of other sources of supply, and the involvement of the contractor's top management in the offense none of which came before the BAR or should have. Cf. United States v. Acme Process Co., 385 U.S. 138, 147, 87 S.Ct. 350, 17 L.Ed.2d 249 (1966). Whether or not the contract plaintiff administered was forfeited is not relevant to the charge that plaintiff violated the gratuity regulations. It is an entirely different issue; thus, there is no showing that the CSC was arbitrary and unfair in not considering the implications of the Agency's failure to forfeit the contract.

It is clear, moreover, that the prohibited act here involved is the acceptance of a gratuity *simpliciter* regardless of the purpose or intention of the contractor or its personnel in giving it and regardless, too, of whether the gratuity has any actual influence on the government official's decisions. Bribery is a different matter entirely.

■ Plaintiff also claims that he was denied access to the FBI Report upon which the charges against him were based and that this prejudiced his case. Plaintiff, however, was precluded from viewing the Report by Department of Justice regulations and not by his accuser—the dismissing Agency. It appears that the Report contained information on an investigation of wide scope and the portion dealing with plaintiff's case was only a small part. Privilege was claimed and the hearing examiner had no choice but to respect it. It appears that the contents of the Report which were relevant to the charges against plaintiff were made available to him. The part of the Report which was not made available to plaintiff was not given to the hearing examiner and was not considered by him or the CSC in reaching their decisions. They knew there was a Report but this of itself did not prejudice plaintiff.

■ Plaintiff also claims that the delay in bringing charges against him was prejudicial. There was a delay of about nine months from the time plaintiff received the case of liquor and the time adverse action was begun against him, but we do not see and plaintiff has not offered any evidence to show any way in which he was harmed by the delay. Because of the gravity of the charges and the consequences that could result from them, it was not unreasonable for the Agency to await a complete investigation before bringing charges against plaintiff.

Plaintiff argues that the Regional Office exonerated him, and as it had the opportunity to assess the credibility of witnesses who appeared before it, the BAR was arbitrary and capricious in substituting its own judgment of whom to believe. The argument would have more force if we had in the record fact findings signed by any person who heard the testimony. We do not. The Regional Office decision is signed by Mr. L. H. Baer, Regional Director, who is not listed in the transcript as one of those present at the hearing. The hearing examiner was Mr. Charles J. Dullea. On the lower left hand corner of the last page of Mr. Baer's decision appears the following: "NY:A:CJD:dmh". From this we may conclude that Mr. Dullea had something to do with drafting the decision, but this is a far cry from establishing that it necessarily reflects Mr. Dullea's assessment of the credibility of any witnesses. For all we know, Mr. Baer may have read the transcript and then directed Mr. Dullea to write up a decision coming to the result it did come to. Moreover, the only person whose credibility might have been considered at issue was plaintiff. The Baer decision

summarizes this testimony but it appears to rest, not on acceptance of it as true, but on omissions and gaps Mr. Baer deemed to exist in the prosecution case. The record affords no solid evidence that any CSC official differed from any other in appraisal of plaintiff's credibility. The facts therefore do not require us to consider plaintiff's argument on the law as to this point.

Plaintiff's final argument is that even if he did accept the case of liquor and even if it were a violation of the gratuity regulations, in any event, the penalty of dismissal was too severe for someone with almost 15 years of satisfactory government service. The Agency is responsible for discipline, according to the Federal Personnel Manual chapter 751–3 subch. 1.1–1.a:

> Section 01.3(d) of Executive Order 9830 places a positive responsibility on the head of each agency "to remove, demote, or reassign to another position any employee in the competitive service whose conduct or capacity is such that his removal, demotion, or reassignment will promote the efficiency of the service." Thus, the agency is both empowered and obligated to act when it determines that action is in order.

This accords with this court's decision dealing with the subject of penalties. "This court has many times held that the matter of penalty is within the discretion of the agency." Liotta v. United States, 174 Ct.Cl. 91, 96 (1966). We said in De Nigris v. United States, 169 Ct.Cl. 619, 625 (1965):

> * * * Although to another it may seem harsh, an agency's decision to dismiss for improper conduct of a substantial nature, rather than to impose some lesser form of disciplinary action, will not be disturbed. Harrington v. United States, 161 Ct.Cl. 432 (1963). It is only where the transgression is so minor, and a discharge based thereon so "unduly harsh and unwarranted", that the dismissal could be considered as constituting "an abuse of discretion * * * that de-

mands redress by this court." Clark v. United States, 162 Ct.Cl. 477, 484 (1963). The offense for which plaintiff was here charged does not fall in such category.

We have, however, held a discharge illegal when it was harsh out of all proportion to the offense, Clark, supra, and likewise when it was not authorized in an applicable schedule of penalties. Daub v. United States, 292 F.2d 895, 154 Ct.Cl. 434 (1961); cf. Cuiffo v. United States, 137 F.Supp. 944, 950, 131 Ct. Cl. 60, 68 (1955).

In Monahan v. United States, 354 F. 2d 306, 173 Ct.Cl. 734 (1965), we held that a discharge for accepting gratuities was not excessively harsh. There they consisted of the payment of hotel bills on six occasions and loans of money on three.

There was received at the hearing an exhibit consisting of a DCRN Regulation No. 1406.1 entitled *Disciplinary Actions*, which includes a schedule of penalties. Plaintiff's counsel used it in cross-examination, and it was not mentioned thereafter. It does not purport to be binding and does not recommend a penalty for any offense that clearly includes the one at bar. Apparently plaintiff does not rely on it. Consequently if we are to hold for plaintiff on this issue, it must be because we find, as in *Clark,* an inherent disproportion between offense and punishment so gross as to appear an abuse of discretion.

In the days of Rameses I, we suppose, the one-way flow of gifts to those deputized to administer government affairs, from those obliged to do business with them, already was an ancient institution. Of course, the impartiality of the donees was in theory not impaired. That would be bribery, of which perish the thought. In many cultures the esteem and love of the citizen for the official was expected to be so large and dependable, it was relied on for the latter's subsistence, no salary or a nominal one only being provided. Sometimes incumbents even had to purchase their of-

fices. That is perhaps, the normal way to do things. Here in the United States we undertake to maintain an exception. The Congress appropriates funds to provide what it deems adequate salaries, frequently adjusted, for those who execute its laws, and on the other hand, the effort is made to restrict the citizenry to expressing its good will towards them in tokens other than money and articles of value. It may well be anticipated, however, that the smallest leak in the dike will swiftly widen, and the old river of gratuities will again flow in the old way. Human nature will reassert itself. It may not be unreasonable, therefore, to believe that what is required is a combination of emphatic warnings and drastic penalties. If at times, as here, this results in tragically wrecking an honorable career for an infraction apparently not of the gravest, this is part of the price that must be paid to maintain the respect and the self-respect of our Government. It is not the result of arbitrary whim or personal vindictiveness. If we judges think we know of some better way to handle this problem, we are not at liberty to impose it in the adjudication of cases.

Here the Director of DCASR, NY, on November 1, 1965, less than two months before the involved infraction, in a circular letter to all employees, warned them with respect to gratuities. He added that "players in this game get but one look at the ball." One strike and you were out: there could not have been a plainer warning. He wrote that if anyone had any doubt as to the implications, he should discuss it with his supervisor. Another point he made is pertinent: that regardless of its predominantly civilian staffing, DCASR, NY, was in effect a military organization with a military mission. This meant he expected lawful orders to be obeyed.

 Plaintiff was vague about particular regulations, but his testimony makes it clear he knew he was not to accept gratuities. His areas of doubt were what constituted a gratuity and from whom he was not to take one. He was aware that taking the liquor might "possibly mean an infraction in some way of the gratuity clause. I didn't know * * *". Still, he did not consult his supervisor as invited to do. In the circumstances, the BAR could regard the violation as willful, and not merely technical or inadvertent. We think that on the established facts the removal was not so inordinately harsh as to constitute an abuse of discretion demanding redress by this court.

Defendant's motion for summary judgment is granted, plaintiff's cross-motion is denied, and the petition is dismissed.