Frank **CAMERO**

v.

The **UNITED STATES.**

No. 192–61.

United States Court of Claims.

April 14, 1967.

Nichols, J., dissented.

---

Edwin J. McDermott, Philadelphia, Pa., attorney of record, for plaintiff.

Thomas J. Lydon, Washington, D. C., with whom was Asst. Atty. Gen. Barefoot Sanders, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

## OPINION

COLLINS, Judge.

This case, in which plaintiff seeks to recover back salary from the date of his alleged wrongful removal from his position as supervisory inspector, GS-9, at the Military Clothing and Textile Supply Agency, Philadelphia Quartermaster Depot, Department of the Army, was originally before the court on cross-motions for summary judgment. The court at that time, with Judge Davis dissenting, found upon review of the administrative record that there were sufficient grounds to warrant the removal of plaintiff and that his removal was based upon substantial evidence. However, both motions for summary judgment were denied and the case was referred to Commissioner Richard Arens for a trial to be limited to issues relating to the alleged participation in the decision-making process by Mr. Theodore M. Kostos, an attorney in the office of the General Counsel of the Supply Agency. Camero v. United States, 345 F.2d 798, 170 Ct.Cl. 490 (1965).

The trial has now been held and Commissioner Arens has filed a report of his findings of fact. The case is before the court for decision without oral argument on the basis of the commissioner's report and the defendant's brief. For reasons hereinafter set out, we hold that plaintiff's removal was invalid and that he is entitled to the back salary he seeks to recover.

The pertinent facts involved in reaching the above decision are as follows: On May 29, 1959, plaintiff, after he had been notified of his proposed removal and had replied thereto, was separated from his position on charges of bribery, false and fraudulent travel vouchers, and undue familiarity with Government contractors. At that time he was also informed of his right to seek review under the Army grievance procedures and of his right to appeal to the Civil Service Commission.

Plaintiff chose to pursue the remedies provided by the grievance procedures and pursuant thereto duly protested his removal. A hearing was held before the Grievance Committee of the Quartermaster Depot. At the hearing, plaintiff was represented by counsel and the Agency was represented by Mr. Kostos. Witnesses were called and testified on direct and cross-examination, exhibits were received in evidence, and counsel for both parties made summary arguments.

On November 2, 1959, the Grievance Committee filed its report with the depot commander, Maj. Gen. Webster Anderson. In this report, for reasons not relevant to the case in its present posture, the Committee recommended, among other things, that the removal action against plaintiff be revoked and that he be reinstated to the position and grade he held at the time of his dismissal.

Before any action was taken on the Grievance Committee's recommendation, but after it had been filed with General Anderson, the General Counsel of the Agency, Donnell K. Wolverton, prepared and submitted a legal opinion to General Anderson in which he stated, *inter alia*:

> After a complete and diligent analysis of all the facts and applicable laws, it is my considered opinion that the grievance of Frank Camero resulting from his separation for cause by this Agency should be denied, notwithstanding the recommendation of the Agency's Grievance Committee.

Thereafter, General Anderson reached a decision to sustain the removal and so informed plaintiff by letter dated December 30, 1959.

When the case was before the court on cross-motions for summary judgment, plaintiff contended that his dismissal was invalidated by certain alleged activities on the part of Theodore M. Kostos, the attorney who had represented the Agency before the Grievance Committee. These activities, according to plaintiff, involved *ex parte* communications between Kostos and those participating in the ultimate decision to sustain his removal, as

well as actual participation by Kostos in that decision.

The basis for the assertion that Kostos had actually participated in the removal decision was the appearance of his handwritten initials in the right margin of the final page of the office copy of General Anderson's decision letter rejecting plaintiff's grievance and a statement by Donnell K. Wolverton (in an affidavit dated June 3, 1963) that the General's letter "was coordinated" with Kostos, among others.

At the proceeding before the trial commissioner, it developed that the inference which plaintiff desired the court to draw from the existence of Kostos' initials on the copy of the decision letter and Wolverton's statement that the letter "was coordinated" with Kostos was not supported by the evidence. It seems that there was in effect at the time a procedure of routing through various offices of the Agency, including the General Counsel's office, material or letters prepared for the commanding general's signature. As evidence that the document had passed through a particular office, an official thereof would initial it. This official (in the General Counsel's office) was the senior official in the office at the time. On the particular day that the letter rejecting plaintiff's grievance was routed through the General Counsel's office, Kostos was the senior official present and he therefore initialed the letter.

The procedure of routing and initialing was loosely referred to by the Agency personnel as "coordinating." This coordinating, according to Kostos' unrebutted testimony on the point, did not necessarily reflect a review of substance of the material routed. It was apparently a procedure designed to keep the various offices informed of what was leaving the Agency over the commanding officer's signature. Thus, when Wolverton stated that the decision to reject plaintiff's grievance "was coordinated" with Kostos, among others, he was simply referring to the fact that the letter had been routed through the required offices of the Agency and had been initialed by Kostos as evidence that it had passed through the General Counsel's office before it was to be sent to General Anderson for signature.

Also, both Kostos and General Anderson testified that he (Kostos) did not have anything to do with the actual decision to sustain plaintiff's removal or the preparation of the letter so informing plaintiff. It seems that that decision had been reached independently by Anderson after he had consulted with both Arthur Jones, chief of the Industrial Relations office, and Donnell K. Wolverton and after he had reviewed the report of the Grievance Committee (and probably, although he had no independent recollection of it, the legal opinion of Wolverton). After reaching this decision, Anderson directed the Industrial Relations office to prepare a letter to so inform plaintiff. The letter was ultimately prepared by Pat T. McNamara, a member of the staff of the Industrial Relations office. And, according to Anderson, he had relied exclusively on the Industrial Relations office, and therefore on McNamara, for the preparation of an accurate and competent letter and, in all probability, would have signed it even if it had not borne the initials of a member of the office of General Counsel.

Thus, as inadvisable as it may have been for Kostos to initial the office copy of the decision letter and as confusing as Wolverton's statement was that the letter "was coordinated" with Kostos, the evidence clearly shows that Kostos did not in fact participate in the actual decision nor did he have anything to do with the actual preparation of the letter to so inform plaintiff.

Plaintiff's other assertion—that Kostos engaged in *ex parte* communications with those participating in the decision to sustain his removal—unlike the allegation of actual participation in the decision, was amply supported by the evidence adduced at the trial proceedings, and it is for Kostos' activities in this regard that we hold plaintiff's removal to be invalid.

Plaintiff's present counsel first became aware of these *ex parte* activities at a conference with Donnell K. Wolverton on April 24, 1964. Thereafter, on May 8, 1964, Wolverton, in response to a request to confirm his statements of April 24, 1964, addressed a letter to plaintiff's counsel wherein he stated his *belief* that " * * * the opinion [i. e., the legal opinion to General Anderson recommending denial of plaintiff's grievance] was either prepared by Mr. Kostos or that Mr. Kostos participated in its preparation." At the trial, Wolverton testified, in explanation of this letter, that prior to preparing his legal opinion for General Anderson but after the Grievance Committee report had been submitted, he had questioned approximately half a dozen attorneys in the General Counsel's office, including Kostos, as to their opinion of plaintiff's case. After listening to and discussing with each attorney his views on the case, Wolverton stated that he formed his own opinion which was then embodied in the legal opinion for General Anderson. Kostos corroborated Wolverton's testimony on this point when he admitted that Wolverton had solicited information from him regarding plaintiff's case and that he had thus participated in the preparation of the legal opinion to the extent that the information elicited from him was used in preparing that document.

We have no doubt that Wolverton formed his own opinion on what recommendations he should make to General Anderson, just as we have no doubt that General Anderson made up his own mind when he decided to sustain plaintiff's removal. The problem is, however, that both decisions were made, at least in part, on the basis of the *ex parte* communication of the opinion of Kostos, who certainly, albeit perhaps not consciously, had as an adversary more than a neutral stake in the final outcome of plaintiff's case. This is enough to require us to invalidate plaintiff's removal as being in violation of the regulations governing the Army grievance proceedings.

The pertinent regulations (Army Civilian Personnel Regulations E 2 (March 1956), hereinafter referred to as CPR E 2) provide that:

* * * the resolution of employee grievances is an integral part of the installation commander's responsibility. This function may not be delegated. However, to relieve commanders of the burden of hearing all grievances personally, grievance committees will be established at the installation level to make findings of fact, hear and evaluate evidence, and make recommendations to the commander as to appropriate disposition of individual cases. *Grievance committee determinations are advisory, constituting privileged staff guidance to the commander.* [C PR E 2 §§ 3–1.]

After granting this hearing-type remedy to employees, the regulations go on to provide specific procedures for the conduct of hearings (CPR E 2 §§ 5–1, 5–2). The net effect is to grant to an employee, when his grievance arises out of adverse Agency action, an adversary-type, evidentiary hearing where the Agency representative acts in a capacity similar to a prosecuting attorney in a criminal trial and the employee's representative acts like a defense attorney.

Failure by the Agency to observe these procedures or the standards of fairness implicit therein makes the attempted unfavorable resolution of an employee's grievance abortive and of no effect. Cf. Vitarelli v. Seaton, 359 U.S. 535, 79 S.Ct. 968, 3 L.Ed.2d 1012 (1959); Service v. Dulles, 354 U.S. 363, 77 S.Ct. 1152, 1 L.Ed.2d 1403 (1957). Of course, one of the fundamental premises inherent in the concept of an adversary hearing, particularly if it is of the evidentiary type, is that neither adversary be permitted to engage in an *ex parte* communication concerning the merits of the case with those responsible for the decision. Cf. Canon 17, ABA Canons of Judicial Ethics; Administrative Procedure Act § 5(c), 60 Stat. 240, 5 U.S.C. § 1004(c) (1964); Sangamon Valley Tele-

vision Corp. v. United States, 106 U.S. App.D.C. 30, 269 F.2d 221 (1959). It is difficult to imagine a more serious incursion on fairness than to permit the representative of one of the parties to privately communicate his recommendations to the decision makers. To allow such activity would be to render the hearing virtually meaningless. We are of the opinion that due process forbids it. See Vitarelli v. Seaton, supra; Service v. Dulles, supra. Thus, we hold that the regulations governing the Army grievance proceedings, since they grant to employees a hearing-type remedy in the process of resolution of their grievances, must be taken to incorporate this fundamental premise of fairness.

Accordingly, plaintiff is entitled to recover back pay from the date of his wrongful removal to the date of judgment, less any salary he may have received during the period from other employment. Judgment is entered to that effect. The amount of recovery will be determined pursuant to Rule 47(c).

DAVIS, Judge (concurring):

I join in the result and in the second half of the court's opinion discussing *ex parte* communications. I do not concur in the first half because I am not willing, even if one accepts the trial testimony at face value and discounts the agency's pre-trial statements that Mr. Kostos either prepared or participated in the preparation of the general counsel's memorandum, to say that Mr. Kostos' activity fell short of participation in the actual process of decision. The *ex parte* communications which the court finds that he made would seem to amount to such intervention—there is no real separation in this case between the charge of participation in the decision and the charge of *ex parte* communications. In view of the disposition of the case, the matter is now academic but I do not want to appear to agree to the narrow definition the court apparently gives to the concept of "participation in the actual decision."

SKELTON, Judge, joins in the foregoing concurring opinion.

NICHOLS, Judge (dissenting):

We have in 5 C.F.R. §§ 752.101 et seq.; 754.101 et seq., 771.201 et seq. (Supp.1966), an overhauling of the adverse actions, grievances and appeal procedure, for civilian employees, adopted in 1963. For some little time before there had been an uneasy sensation that constitutional and statutory support for some customary and usual procedures might be lacking. Loyalty and security cases had monopolized the spotlight, leading to a neglect to keep abreast of the times in other more routine adverse action cases. Since 1963, there has been no excuse for anything short of the most meticulous due process in that area.

But I doubt very much whether in 1959, the date of the action here involved, there was a complete separation of prosecution and adjudication in employee adverse action cases. If there is not this clear separation, those having functions of the two kinds may not fully appreciate they are not supposed to talk to each other. Indeed, the whole concept that such conversations are objectionable *ex parte* communications seems of doubtful application. In a field installation, prosecuting and adjudicating employee adverse actions are not full time jobs, and usually do not take even a major portion of anyone's efforts. It is a little hard to expect people who work together constantly with respect to most of their duties to wall themselves off with respect to a kind of work which is to them unusual and unfamiliar. For these reasons, a proper conformity with the standards the court so eloquently stresses most likely would have required clear, written directives from headquarters, and in many cases, temporary loan of experienced personnel from outside. I find it, therefore, a little hard to imply from a regulation calling just for a hearing, a commitment that the General shall not talk to Mr. Kostos. It ought to be construed as those who used it would have naturally interpreted it at the time.

Hence, I think all the indignation, the references to the ABA Code of Ethics and the Administrative Procedures Act, are misplaced. It is conceded that plaintiff, a nonveteran, was not in 1959 entitled to any procedure at all except as the regulation accorded it; absent its strained construction of the regulation, the court has no basis to say the General's action, or Mr. Kostos', however reprehensible, deprived him of any legal right. And there is nothing to show the General was not capable of evaluating Mr. Kostos' natural bias as prosecutor and discounting anything he might say. It has not been my experience that the views of civilian lawyers have exactly overpowering weight with Generals. Nor is there anything to show he would have refused to receive an *ex parte* communication from the other side, if proffered. We are imposing sophisticated techniques on a relatively primitive procedure which, for all we know, had its own due process and was not fundamentally unfair.