Allan J. HOTH, Appellant,

v.

VALLEY CONSTRUCTION, Hartford Insurance Company and/or United States Fidelity, Appellees.

No. 6750.

Supreme Court of Alaska.

Sept. 30, 1983.

Stephen C. Cowper, Cowper & Madson, Fairbanks, for appellant.

Robert B. Groseclose, Merdes, Schaible, Staley & DeLisio, Inc., Fairbanks, for appellees.

Before BURKE, C.J., MATTHEWS and COMPTON, JJ., and BRYNER, C.J., Court of Appeals.*

OPINION

PER CURIAM.

In this workers' compensation case, the issue is whether there is substantial evidence to support the Workers' Compensation Board's conclusions that a disability is not work-related and that, assuming the disability was work-related, the claim for compensation is untimely. The facts recited below are undisputed, except as otherwise indicated.

Allan Hoth, a hod carrier, fell twelve to fourteen feet from a scaffolding to the ground below in September, 1971, while in the employ of Valley Construction. Hoth was bruised and shaken, but he did not visit a doctor, he was not disabled, and he returned to work that same day. Hoth and his wife testified that he injured his right wrist in breaking his fall. Whether or not he injured his wrist in fact is an open question which the Board did not expressly resolve.

In ensuing years, Hoth continued to engage in heavy manual construction labor. He occasionally felt twinges in his right wrist. By 1974, according to Hoth, he occasionally experienced "sharp pains through the wrist"; in 1977 the "wrist had gotten really bad." In 1978, Hoth visited Dr. Christianson, who X-rayed the wrist and referred Hoth to Dr. Kelly. Dr. Kelly asked Hoth if he had ever broken his wrist; Hoth said he had not, and Dr. Kelly responded with words to the effect that he must have broken the wrist at some point in order for it to be in the shape it was. The doctor told Hoth that a wrist fusion was indicated. Hogh sought a second opinion from Dr. Ribar, who prescribed anti-inflammation drugs to control the pain; Hoth found this sufficient and declined surgery. He continued to work.

In 1980, the pain from Hoth's wrist became disabling. Dr. Joosse examined Hoth and concluded that a wrist fusion was indicated. When asked by Dr. Joosse during the examination whether he had ever injured the wrist, Hoth was unable to say. That evening, however, Hoth's wife reminded him of the 1971 incident and the next day Hoth called Dr. Joosse and told the doctor about it. The doctor expressed the opinion, based on Hoth's story, that the 1971 injury had caused the wrist's current condition.

At his deposition, Dr. Joosse testified that two bones in the wrist had separated and that degenerative arthritic changes associated with this separation had occurred, resulting in the disability. Such a bone separation, or "navicular/lunate disarticulation," "happens from probably a fall on the outstretched hand, in which the ligaments are torn."

The amount of degenerative arthritis indicated an injury "at least a year or more old" and "probably several years old." Mr. Hoth's injury and history of initial pain and swelling, followed by an apparent disappearance of symptoms, with a later reappearance of pain, and active work over a nine year period, was consistent with an initial injury at the time of the scaffold fall. The wrist's condition could also have been caused by a lesser fall, such as from a chair or a collapse from an erect position. The original fall, or a later fall, assuming one occurred, were equally consistent with the wrist condition.

The Worker's Compensation Board concluded that Hoth's claim for compensation based on a compensable injury occurring in 1971 was time barred. The Board found that, assuming that the disability was work-related, had Hoth acted with reasonable diligence, he "should have come to understand the nature of his disability and its relationship to his employment [more than two years prior to the date he filed his claim]." Furthermore, it found that in fact

* Bryner, Chief Judge, Court of Appeals, sitting by assignment made pursuant to article IV, section 16 of the Constitution of Alaska.

the disability was not the result of the 1971 fall, but of a later one.

On appeal, Judge Hodges affirmed the Board and Hoth appeals again.

## TIMELINESS

Hoth's claim was timely unless he failed to file within two years from the time when, in the exercise of reasonable diligence (taking into account his education, intelligence, and experience), he would have come to know the nature of his then-latent disability and its relation to his employment. *See* AS 23.30.105(a); *W.R. Grasle Co. v. Alaska Workmen's Compensation Board,* 517 P.2d 999, 1002–03 (Alaska 1974).

■ Hoth filed his claim with the Board on October 17, 1980. Assuming that Hoth injured his arm in 1971, it is not disputed that his injury and its potentially disabling effect would have been apparent to a competent examining doctor within several years of that time. The reasonableness of Hoth's conduct thus turns on two factors: (1) his failure to go to the doctor when the symptoms reappeared, *after* the initial discomfort had ended,[1] and (2) his failure to associate his 1971 injury with his subsequent wrist pain and eventual impairment.

■ Hoth went to the doctor in 1978, when the problem with his wrist became serious enough to interfere with his work. He may have mentioned the wrist to his doctor on an earlier visit. As Hoth says, a construction laborer isn't likely, nor is he required, to consult a doctor concerning the minor aches and pains of hard physical labor, and we do not see that his delay in seeking medical attention for his wrist was unreasonable.[2]

■ In 1978, when Hoth did visit a doctor, the doctor asked Hoth if he had broken his wrist. From this fact the Board could conclude that Hoth's failure to associate the 1971 injury with his then-current condition was unreasonable. However, the evidence is unclear as to precisely when this visit took place. Evidently it was close to October 31, 1978, well within two years of the date of the claim. To the extent, then, that it was the examination by Dr. Kelly, with the pointed inquiry as to damage to the wrist, that would have triggered a reasonable person's awareness of the earlier work incident, the claim has not been shown to be untimely. We conclude that the Board's finding as to timeliness must be reversed.

## WORK–RELATEDNESS

■ The evidence against a work relation is at most speculative. The evidence that

---

1. It is well established that a worker does not have to visit a doctor every time he incurs minor, non-disabling injuries, which do not immediately appear to have any permanent significance. To the extent that an immediate visit to a doctor in connection with short-lived symptoms is called for, the relevant provision is AS 23.30.100, not AS 23.30.105. In this case the Board specifically concluded that Hoth's failure to seek immediate medical aid was not grounds for striking his claim under § 100. *See Alaska State Housing Authority v. Sullivan,* 518 P.2d 759, 761 (Alaska 1974). We think this conclusion precludes finding his claim untimely under AS 23.30.105 based on his failure to visit a doctor at the time of his initial injury or shortly thereafter.

2. It is profitable to examine the facts underlying our decision in *Grasle,* for comparison. In *Grasle,* the claimant, in 1965, "stepped on a corner of a defective grille and fell 14 feet onto the frozen ground, the grille landing on him."

517 P.2d at 1000. This is virtually the identical accident that befell Hoth. In *Grasle,* however, the resulting immediate injuries were considerably more severe, including multiple fractures, and there was an immediate claim for temporary total disability. After an eight-week period of temporary total disability, the claimant returned to work and continued working full time thereafter, although he suffered from continuous pain and his movement was somewhat limited. Six years later, in 1971, the claimant filed an application for permanent disability benefits based on "degenerative [musculoskeletal] changes:" virtually the identical claim Hoth is making. The Board, and this court, found this claim timely despite the six year gap. The only relevant difference in these cases is that the *Grasle* claimant had suffered such a severe injury initially that he had gone to a doctor, while Hoth, who was less severely hurt, did not. In terms of the timeliness of his claim for *permanent* disability, this distinction weighs in Hoth's favor.

no claim was made for a wrist injury and that nobody recalled Hoth mentioning an injury is not particularly illuminating, since the fact of the fall is uncontested and both Hoth and his wife specifically testified that he did injure the wrist after falling from the scaffolding. The fact that Hoth failed to recall the incident nine years after it occurred is also not particularly compelling, given the lack of significant symptoms resulting from it. Finally, although there were intervening events in which a similar injury *might* have been incurred, there was nothing to show that any such injury or incident in fact did take place; more importantly, Hoth and his wife specifically denied that his wrist had been made sore other than through normal use since the initial injury,[3] and the onset of degenerative arthritis that indicated an injury at least a year or more old is consistent with an earlier injury. Absent a showing of evidence to the contrary, claims for compensation are presumed to come under the statute. *See* AS 23.30.120(1); *Rogers Electric Co. v. Kouba,* 603 P.2d 909, 911 (Alaska 1979).

In reviewing a decision of the Board, the applicable standard of review is the substantial evidence test. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Miller v. ITT Arctic Services,* 577 P.2d 1044, 1049 (Alaska 1978). This is the quantum of evidence necessary to overcome the presumption that Hoth's disability arose from the 1971 incident rather than from an independent cause. *Alaska Pacific Assurance Co. v. Turner,* 611 P.2d 12, 15 (Alaska 1980); *Rogers Electric Co. v. Kouba,* 603 P.2d at 911 (Alaska 1979). Furthermore,

> [w]hile the judiciary may not reweigh the evidence before the Board, neither may it abdicate its reviewing function and af-

firm a Board decision that has only extremely slight supporting evidence.

*Black v. Universal Services, Inc.,* 627 P.2d 1073, 1076 (Alaska 1981) (citation omitted).

In *Turner,* we affirmed the superior court's rejection of the Board's finding of no work-relatedness where the Board emphasized Turner's failure to get medical attention at the time pain first manifested itself, and his failure to mention any back or leg pain when he sought medical aid for an unrelated problem. This is essentially the same kind of evidence that the Board relied on in this case. The only difference is that in Hoth's case there was a lengthy period during which some other accident might have occurred to cause his current condition. On this record, however, little more than speculation would support a finding of independent causation.

The mere possibility of another injury is not "substantial" evidence sufficient to overcome the presumption of compensability. Accordingly, we reverse the Board's decision that Hoth's current disability is not work-related.

REVERSED.

RABINOWITZ and CONNOR, JJ., not participating.

---

3. We note the recent amendment to the Alaska's Workers' Compensation Act adding section 122, which provides:
   CREDIBILITY OF WITNESSES. The board has the sole power to determine the credibility of a witness. A finding by the board concerning the weight to be accorded a witness's testimony, including medical testimony and reports, is conclusive even if the evidence is conflicting or susceptible to contrary conclusions. The findings of the board are subject to the same standard of review as a jury's finding in a civil action.
   Absent specific findings by the Board that it chose to disbelieve a witness's testimony, we will not assume that lack of credibility was a relevant factor in the Board's decision.