**LOUISIANA PACIFIC CORPORATION, Appellant,**

**v.**

**Harold H. KOONS and the Alaska Workers' Compensation Board, Appellees.**

**No. S–4086.**

Supreme Court of Alaska.

Sept. 20, 1991.

Paul M. Hoffman, Robertson, Monagle & Eastaugh, P.C., Juneau, for appellant.

Patrick E. Murphy, Batchelor, Murphy & Brinkman, Juneau, for appellee Koons.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

OPINION

PER CURIAM.

Harold Koons worked for the Ketchikan Pulp Company ("KPC") from July 9, 1957 until he retired on May 29, 1987. He worked in the pulp mill's bleach plant for more than 15 years where he was exposed to sulfur dioxide ($SO_2$) and chlorine gas.

Koons first sought treatment for respiratory problems on February 26, 1980. Dr. Hilbert Henrickson's notes of that examination indicate that Koons had symptoms of a chest cold for about three weeks and that he had been exposed to sulfur dioxide three weeks earlier. On February 28, Koons was admitted to the emergency room where he once again saw Dr. Henrickson. Henrickson recorded his impression that Koons was suffering from the flu complicated by exposure to sulfur dioxide.[1]

Koons filed a Report of Occupational Illness or Injury on January 28, 1987, claiming that his lungs had been affected by sulfur dioxide exposure in the KPC bleach

1. Koons sought further medical treatment for respiratory problems in September 1981, when he was seen by Dr. Dorsett Smith at the University of Washington Hospital, in January 1982, and December 1984, when he was seen by Dr. Henrickson.

plant. The report includes a statement by a KPC official that on January 28 "[t]he vent fan in the acid plant kicked out causing $SO_2$ gas in the Bleach Plant area." KPC gave notice of its intent to controvert payment of benefits contending that the injury was not work-related.

Koons consulted Dr. George Stewart, a lung disease specialist, in May of 1987. Stewart diagnosed Koons as suffering from asthmatic bronchitis. He testified that it is often impossible to state conclusively what causes asthmatic bronchitis, but concluded that Koons' asthma was probably related to his work for KPC. At KPC's request, Koons was also examined by Dr. Michael Mullarkey. Mullarkey agreed with Stewart that the causes of asthma are difficult to discern and that Koons was suffering from asthmatic bronchitis and should not be exposed to fumes.

The Alaska Workers' Compensation Board (the "board") issued a decision denying Koons' claim on April 19, 1988. It found that the presumption of compensability had been overcome, and that Koons had failed to prove his case by a preponderance of the evidence.[2] Koons appealed to the superior court. On November 17, 1988, the court partially granted Koons' motion for remand to the board for reconsideration. On remand, the board considered whether it erred by finding that Henrickson's flu diagnosis was sufficient proof that the asthma was not work-related. The board denied Koons' petition, and the superior court case resumed.

The superior court found for Koons on the issue of work-relatedness concluding that "the evidence ... does not rise to the level of substantial evidence needed to overcome the presumption." The court also ruled that, on remand, the case should be heard by board members other than those who first considered it, to avoid any unfairness resulting from ex parte contacts by members of the board with KPC officials. KPC appeals.

A. *The Presumption of Compensability*

Alaska's workers' compensation statutes establish that an employee's claim is presumed to be compensable. AS 23.30.-120(a)(1). We have consistently held:

> A claimant's disability is presumed to be compensable when he or she demonstrates a "preliminary link" between the disability and his or her employment.... "[T]he claimant need *not* present substantial evidence that his or her employment was a substantial cause of ... disability" in order to establish the required preliminary link. What a claimant is required to produce is "some evidence that the claim arose out of, or in the course of, employment before the presumption arises."

*Cheeks v. Wismer & Becker*, 742 P.2d 239, 243–44 (Alaska 1987) (emphasis in original) (quoting *Fox v. Alascom, Inc.*, 718 P.2d 977, 984 (Alaska 1986) and *Burgess Constr. Co. v. Smallwood*, 623 P.2d 312, 316 (Alaska 1981)). We have also stated that once this "preliminary link" has been established, "it is the employer's burden to overcome the presumption by coming forward with substantial evidence that the injury was not work related." *Burgess Constr. Co. v. Smallwood*, 698 P.2d 1206, 1211 (Alaska 1985) (citations omitted). When the presumption of compensability has been successfully rebutted, it drops out and the employee must prove all the elements of the case by a preponderance of the evidence. *Miller v. ITT Arctic Serv.*, 577 P.2d 1044, 1046 (Alaska 1978).

The board found that Koons presented sufficient evidence to raise the presumption of compensability, relying primarily on Dr. Mullarkey's testimony that he believes Koons' "reactive airway disease [is] secondary to airborne chemical burn ... perpetuated by continued exposure to sulfur dioxide and chlorine." The board concluded that KPC "presented evidence to overcome the presumption. Employee's first treatment for bronchial spasms was

2. The board's chairperson, Rebecca Ostrom, filed a separate opinion disagreeing with the majority's decision that Koons' illness was not work-related. She, nonetheless, would have denied benefits, finding that Koons had chosen to withdraw from the labor market.

not until February 1980, some three weeks after an exposure, and at a time when he had the flu." This is a reference to Koons' February 28, 1980 visit to Dr. Henrickson for treatment of a cough he had for three weeks. Although Henrickson recorded his "impression" that the cough was probably flu-related, the chart notes also indicate that Koons had been exposed to sulfur dioxide three weeks earlier, and that he suffered from "bronchitis, complicated by secondary to $SO_2$ exposure."

There was no evidence that Koons' disability was not caused in substantial part by his employment. It appears the board required Koons to establish that his asthma was work-related, rather than requiring KPC to overcome the presumption by showing that the asthma was not caused by his employment. This is contrary to established law and constitutes error.[3]

B. *Ex Parte Communication*

The day after Koons' hearing, one of the board members, David Richards, initiated a conversation with two KPC witnesses, one of whom was KPC's rehabilitation expert. Board members Thomas Chandler and Rebecca Ostrom, and KPC's attorney Paul Hoffman, were present during this conversation and may have heard all or part of it. Richards questioned the KPC officials about the feasibility of using a beeper system to warn KPC employees of chemical leaks. The conversation appears to have been related to the issue of whether Koons would be able to perform other jobs at the mill.

Koons argued to the superior court that he was deprived of his right to a fair hearing by the board because of Richards' ex parte communication with KPC officials. The superior court ruled that the alleged bias could not have affected the board's decision regarding causation since the alleged improper communication was related to an issue the board did not reach, whether Koons was disabled. The superior court concluded, however, that on remand the case should be heard by uninvolved board members, since the board will then be required to decide the extent of Koons' disability.

The superior court did not abuse its discretion in so ordering. The ex parte communication was a violation of accepted standards of conduct for an adjudicatory body. *See, e.g., Camero v. United States,* 375 F.2d 777, 780–81, 179 Ct.Cl. 520 (1967):

> [O]ne of the fundamental premises inherent in the concept of an adversary hearing ... is that neither adversary be permitted to engage in an *ex parte* communication concerning the merits of the case with those responsible for the decision. It is difficult to imagine a more serious incursion on fairness than to permit the representative of one of the parties to privately communicate his recommendations to the decision makers.... We are of the opinion that due process forbids it. (Citations omitted.)[4]

3. *See Hoth v. Valley Constr.,* 671 P.2d 871, 874 (Alaska 1983) ("[t]he mere possibility of another injury is not 'substantial evidence' sufficient to overcome the presumption of compensability"); *Rogers Elec. Co. v. Kouba,* 603 P.2d 909, 912 (Alaska 1979) ("the Board's decision [that the injury was not work related] was not supported by the 'substantial evidence' necessary to rebut the statutory presumption of coverage", since "there was no clear-cut testimony at all indicating lack of causation."); *Fireman's Fund American Ins. Cos. v. Gomes,* 544 P.2d 1013, 1016 (Alaska 1976) ("In the absence of affirmative evidence indicating the cause of Gomes' death, we cannot say that the Board erred in holding that the presumption was not overcome."); *Thornton v. Alaska Workmen's Compensation Bd.,* 411 P.2d 209, 211 (Alaska 1966) (where "[n]either of the two medical witnesses testified that Thornton's [employment] did not contribute to his death.... [T]here is lacking the kind of evidence which a reasonable mind might find adequate to support the Board's determination that the [employment] was not a crucial precipitating factor in Thornton's death.").

4. *Camero* ruled that plaintiff was entitled to back pay from the date he was removed from his position with the Army because the decision maker had sought the opinion of the plaintiff's attorney who had "an adversary more than a neutral stake in the final outcome of plaintiff's case." *Id.* 375 F.2d at 780. A violation of Army procedures was found even though the court did not doubt that the decision maker "formed his own opinion" on the matter. *Id.*

The Alaska Administrative Procedure Act, AS 44.62.630, states:

> The functions of hearing officers and those officers participating in decisions shall be conducted in an impartial manner with due regard for the rights of all parties.... These officers ... may not engage in interviews with, or receive evidence or argument from, a party, directly or indirectly, except upon opportunity for all other parties to be present.

The disqualification remedy devised by the superior court was an acceptable response to the board's ex parte communication.

C. *Attorney's Fees and Costs*

The superior court correctly awarded Koons, as the prevailing party, his attorney's fees and costs pursuant to AS 23.30.-145 and Appellate Rule 508.

The decision of the superior court is AFFIRMED.