**OSBORNE CONSTRUCTION COMPANY and Alaska Insurance/AIAC, Co., Appellants,**

v.

**Kenneth JORDAN, Appellee.**

**No. S–6105.**

Supreme Court of Alaska.

Sept. 15, 1995.

Rehearing Denied Oct. 27, 1995.

and Osborne appealed.[1] We affirm the superior court's decision.

## II. FACTS AND PROCEEDINGS

### A. The Injury

Jordan was employed as a backhoe operator for Osborne during the summer of 1989 at a project at Fort Wainwright. Jordan alleges that he injured his lower back on, or around, August 15, 1989, by lifting a compactor out of a ditch while at work for Osborne. He did not report the injury to anyone and continued to work. Jordan at one time claimed that he attempted to report the injury but was instructed not to report injuries by his immediate supervisor, Wayne Jordan (appellee's father), and by the project supervisor, James Worley. Following their denial, Jordan retracted his statement, claiming he should have said Osborne did not want too many injuries reported.

Worley learned of Jordan's injuries when he went to the job site to find a back hoe and operator for a small digging job:

> [W]hen I got there, I motioned him off the machine and when he got off the machine he was walking bent over side ways and I asked him what had happened to him— what happened to you and he said—he told me that [he] had hurt his back. And I asked him how he did it and then he said that he was—was moving—helping a laborer move a compactor out of a footing.
>
> .    .    .    .    .
>
> He got off the machine, he was stooped over and he was limping and was real stiff. And having had back surgery, he didn't have to tell me what his problem might— for (indiscernible).
>
> .    .    .    .    .
>
> I can look at a man—a way a man's walking and I can—if you've ever had it, you know it.

Jordan also told his father, Wayne, what had occurred at the job site. His father told the Board, "I thought he just pulled a muscle in his back." This belief was corroborated when his son continued to work and "after

Tasha M. Porcello, Pletcher, Weinig, Moser & Merriner, Anchorage, for Appellants.

Valerie M. Therrien, P.C., Fairbanks, for Appellee.

Before MOORE, C.J., RABINOWITZ, MATTHEWS, COMPTON and EASTAUGH, JJ.

### OPINION

MOORE, Chief Justice.

## I. INTRODUCTION

Kenneth Jordan filed a workers' compensation claim against his former employer, Osborne Construction Company (Osborne). The Alaska Workers' Compensation Board (the Board) denied Jordan's claim, finding that Osborne had presented substantial affirmative evidence to rebut the statutory presumption of compensability and that the preponderance of evidence indicated that Jordan's injury was not work-related. The superior court reversed the Board's decision

---

1. Osborne's insurer, Alaska Insurance/AIAC Co., is co-appellant in this case.

about two weeks, he stopped limping." Jordan continued working at the Fort Wainwright job and did not seek medical attention. He was laid off in October 1989. Up to the end of the job, he felt he could continue to work as an operator:

I thought I could still continue working. Once my leg quit hurting, I felt better and I thought that I would get better. My assumption was that I was going to get better and I had improved—in fact I had improved without having the leg pain.

### B. *The Medical Diagnosis and Treatment*

Jordan first consulted a physician concerning lower back pain in March 1990. That physician, Dr. Young Ha, an orthopedic surgeon in Fairbanks, made the following chart notes:

This young fellow who developed rather sudden onset of pain in his left side of the buttock which goes down the back of the thigh all the way down to the calf. The pain is rather persistent and quite disturbing in terms of his ability to do things.... This pain started about eight days ago *after playing basketball and moving furniture about an hour* although he does not recall any specific incident in which he had any pain although he did feel some discomfort in his lower back.

Late October [sic][2] 1989 he had back pain after pulling a plate compactor up from a slope at his work for Osborne Construction Company. However, he did not have any leg pain and he did not lose any time from his work.

(Emphasis added.) Dr. Ha concluded that Jordan was suffering from a herniated disc, most likely at L4–L5. He recommended conservative treatment and instructed Jordan to return if he did not improve. Jordan did not return for a follow-up visit.

He next sought relief from two chiropractic clinics. In April 1990, while on vacation in Oklahoma, Jordan consulted Dr. G.F. Palmer. Jordan's wife filled out the New Patient Preliminary Information Questionnaire and described his problem as pain

through lower back to calf. The date of the accident was stated as "beginning of March," and the cause was listed as "carrying furniture." References on the form to "on the job" injury and "workers' compensation" insurance were left blank. Jordan signed the form. After returning to Fairbanks, Jordan sought treatment from Dr. Frank Spaulding, DC, and began a series of treatments. The intake forms from Dr. Spaulding's office also indicated that Jordan's condition arose after "moving furniture," and he again answered questions concerning on the job injury and workers' compensation in the negative. The efforts at seeking relief through chiropractic manipulation were unsuccessful.

Jordan next sought an evaluation in May 1990 from Dr. Edwin Lindig, an orthopedic surgeon at the Fairbanks Clinic. Once again, Jordan stated on the patient intake form that his condition arose after "moving in February." Later in May, Jordan consulted Dr. George Vrablik, another orthopedic surgeon at the Fairbanks Clinic. Jordan told Dr. Vrablik that he had first hurt his back "at work," then later "while moving." Dr. Vrablik ordered a CT scan, which revealed, for the first time, that Jordan had herniated discs at three levels of his lumbar spine, L3–L4, L4–L5, and L5–S1. Dr. Vrablik recommended that Jordan fill out "workman's comp paperwork." This led to the filing of the formal Report of Injury on June 5, 1990.

In June Jordan received a second opinion from Dr. George Brown, another orthopedic surgeon in Fairbanks. Dr. Brown confirmed Dr. Vrablik's diagnosis. With Dr. Vrablik out of town on vacation, Dr. Brown performed a three-level decompression laminectomy. Jordan recovered quickly from the surgery. In less than two months, he accepted a temporary job with the Fairbanks North Star Borough School District as a substitute custodian.

Subsequent to the surgery, the parties entered into a stipulation that Jordan's permanent impairment rating, based on the American Medical Association Guidelines to Permanent Impairment, should be 21.5% of the

---

2. The correct month was August.

whole man.[3] Prior to the stipulation, Osborne asked Dr. Robert Fu, an Anchorage orthopedic surgeon, to rate Jordan's impairment. Osborne also asked Dr. Fu to state an opinion as to the work-relatedness of Jordan's disability. In a letter to Osborne's counsel, Dr. Fu stated that, based on the history given him by Jordan and the records which Osborne provided, the start of his back trouble was on August 15, 1989, while working for Osborne, and the injury was aggravated by his subsequent moving of furniture.

### C. The Workers' Compensation Claim

Osborne initially accepted Jordan's claim for workers' compensation benefits and paid temporary total disability (TTD) and medical costs from June 7, 1990 to October 9, 1990, at which time Jordan was released for light duty work as medically stable under AS 23.30.265(21). In January 1991, Jordan filed an Application for Adjustment of Claim requesting a hearing before the Board. Osborne filed an answer controverting the benefits requested by Jordan on the grounds that his back condition was not work-related.

A hearing before the Board was held on December 17, 1991, but was not concluded. When the Board reconvened on February 4, 1992, one of the three members of the panel considering Jordan's claim was not present. The remaining two members proceeded to hear the case under AS 23.30.005(f), which permits two of the three panel members to constitute a quorum.

In a February 1992 Decision and Order, the two members of the panel hearing the claim announced that they could not agree on whether Jordan's claim was compensable. They decided to submit the recorded testimony from the February 4, 1992, hearing to the third member to review and cast the deciding vote.[4]

In a second Decision and Order issued March 31, 1992, the absent member of the panel, having reviewed the record, decided

the claim was not compensable. The majority concluded that Jordan was not a credible witness and that, as a result, the medical reports supporting his claim also were not credible since they were based on what Jordan had reported to the physicians.

The third board member wrote a separate dissenting opinion. He wrote:

I do not find it particularly surprising that someone suffering sharp back discomfort would initially ascribe the pain to the most recent vigorous activity. Once it is apparent that the injury is more profound than originally assumed, the search for the underlying cause of the condition would of necessity become more intense. Regrettably, the employee's lack of reliability in this case makes the determination of the ca[u]se of his injury more difficult for everyone concerned: the physicians, the employer and the insurer, and the board. In a nutshell, I am persuaded by Dr. Brown's opinion that the employee's claim simply fits the facts better than alternate explanations. I would find the employee's attempt to move a heavy industrial dirt compactor the most likely cause of his herniated disc. As a consequence, I would find his claim compensable.

Jordan appealed the Board's decision to the superior court. The superior court reversed the Board and remanded with instructions to find Jordan's claim compensable. Osborne appeals this decision.

### III. DISCUSSION

■■■ Under Alaska's workers' compensation statute, an employee's claim is presumed to be compensable. AS 23.30.120(a)(1). The application of this statutory presumption involves a three-step analysis. *Louisiana Pacific Corp. v. Koons,* 816 P.2d 1379, 1381 (Alaska 1991) (per curiam). First, the employee must establish a "preliminary link" between the disability and his or her employment. *Id.* Once this preliminary link has

---

**3.** The Board rejected this stipulation in a Decision and Order dated December 10, 1991, holding that the parties could not by agreement impede the Board's prerogative to order, if it so elected, its own independent medical evaluation under AS 23.30.095(k).

**4.** We recently approved such a procedure in *Schmidt v. Beeson Plumbing & Heating,* 869 P.2d 1170, 1177–79 (Alaska 1994).

been established, "it is the employer's burden to overcome the presumption by coming forward with substantial evidence that the injury was not work related." *Id.* (quoting *Burgess Constr. Co. v. Smallwood*, 623 P.2d 312, 316 (Alaska 1981)). While the employee still bears the burden of proof, the burden of going forward with evidence shifts to the employer. *Municipality of Anchorage v. Carter*, 818 P.2d 661, 665 (Alaska 1991). If the employer successfully rebuts the presumption of compensability, the presumption drops out and the employee must prove all of the elements of the case by a preponderance of the evidence. *Koons*, 816 P.2d at 1381.

The Board found that Jordan successfully established a preliminary evidentiary link raising the presumption of compensability. This finding was based on the testimony of Jordan's supervisors that he suffered a back injury on the job. Osborne does not dispute this finding. The real controversy in this appeal centers on whether Osborne adequately rebutted the presumption of compensability.

An employer can rebut the presumption "either by presenting affirmative evidence that the injury is not work-connected or by eliminating all possibilities that the injury was work-connected." *Veco, Inc. v. Wolfer*, 693 P.2d 865, 872 (Alaska 1985). Whether or not an employer has produced substantial evidence to rebut the presumption of compensability is a question of law to which this court applies its independent judgment. *Id.* at 871 n. 8. "Substantial evidence is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Hoth v. Valley Constr.*, 671 P.2d 871, 875 (Alaska 1983) (quoting *Miller v. ITT Arctic Serv.*, 577 P.2d 1044, 1049 (Alaska 1978)).

In this case, Osborne sought to rebut the presumption of compensability by presenting evidence that Jordan originally attributed the onset of his 1980 disability to moving furniture and playing basketball. A majority of the board agreed, finding that "[t]he available medical records of the employee's visits to the chiropractors and to Dr. Ha on March 19, 1990, all implicitly indicate that this back

condition arose by the employee either playing basketball or moving furniture."

The superior court reversed the board, observing that "the evidence presented by Osborne, namely that Jordan initially cited to the furniture moving and basketball playing as the potential culprits of his back and leg pain, does not exclude the possibility that the injury he experienced after lifting the compactor was somehow the culprit." We agree. Under Alaska law, a disability arising after a non-work-related injury is still compensable if an earlier work-related injury substantially contributed to the employee's disability. *See Walt's Sheet Metal v. Debler*, 826 P.2d 333, 335 (Alaska 1992). Thus the fact that an employee has suffered a non-work-related injury does not, standing alone, rebut the presumption of compensability. *Alaska Pacific Assur. Co. v. Turner*, 611 P.2d 12, 14 (Alaska 1980) (holding that where an employee suffers a work-related injury and then suffers an aggravation unrelated to his employment, the employer must show that the work-related injury was not a "substantial factor contributing to the later injury" in order to rebut the presumption of compensability).

In *Turner*, an employee began to suffer from pain in his right leg while working as a heavy machine operator. Although his leg pain grew progressively worse, the employee did not consult a doctor. Approximately two months after he stopped working for his employer, in part because of his recurrent leg pain, the employee experienced a sharp pain in his back when he lifted the tongue of a boat trailer. *Id.* at 13. The employee then consulted a doctor who ultimately concluded that the employee had suffered a herniated disc as a result of his work as a heavy machine operator. *Id.* at 13–14. In reversing the board's finding that the employer had rebutted the presumption of compensability, we observed:

> Apparently the Board concluded that [the employee] either suffered no injury while working for [the employer] or that, if he did, such injury was not a substantial factor contributing to the later injury. In essence, the Board chose to disbelieve [the employee's] account of the onset of his

symptoms and rejected Dr. Newman's evaluation of his injuries. The Board emphasized [the employee's] failure to seek medical attention until after the trailer lifting incident, and his failure to mention any back or leg pain while visiting a medical clinic for a skin problem in January, 1976. Relying on Dr. Newman's notes, which were later related by him in his testimony, the Board further emphasized what it perceived as conflicts in the medical history [the employee] purportedly gave to Dr. Newman. Based on this evidence, the Board concluded that [the employee's] disability resulted entirely from the trailer lifting incident.

Seemingly ignored by the Board was the testimony of [employee's] camp supervisor, Robert Terry, which strongly supported [the employee's] own testimony, and the opinion of his doctor, that his symptoms appeared and worsened while he was working for [the employer]. We note also that the record contains no medical opinion contrary to the one expressed by Dr. Newman . . .

*Id.* at 14–15 (footnotes omitted). In the absence of conclusive medical evidence, the *Turner* court concluded that the employer had failed to present substantial evidence rebutting the presumption of compensability. *Id.* at 15.

▇ Although expert medical evidence is not always necessary to rebut the statutory presumption, something more than proof of a non-work-related injury is required. *See, e.g., Wolfer,* 693 P.2d at 871–72. In *Wolfer,* an employee became disabled after he collapsed at work while tightening an overhead bolt in 1980. The employer sought to rebut the presumption of compensability by presenting circumstantial evidence suggesting that the employee's 1980 disability had actually been caused by an earlier 1979 injury. We summarized the employer's evidence as follows:

(1) [The employee] suffered a disabling back injury in December 1979. [The employee] testified, both in his deposition and at his hearing, that since 1979, his back bothered him recurrently whenever he engaged in manual labor.

(2) [The employee] testified that on two prior occasions (in March and April of 1980) he passed out while bending over. [The employee] related these incidents to his December 1979 injury.

(3) It is undisputed that when [the employee's] back gave out in October 1980, he was not engaged in strenuous activity and did not slip or fall.

(4) [The employee] wrote in his October 1980 Report of Occupational Injury or Illness that he had "pulled something in his back" which "happens of [sic] and on every so often under hard labor since 1979."

(5) [The employee] testified that when he returned to Veco on October 23, 1980, he worked primarily as a supervisor. [The employee] continued working after October 26, 1980, until he was laid off on November 27, 1980 because of a reduction in the work force.

(6) [The employee's] treating physician after November 1980] testified that [the employee] never mentioned the October 1980 incident when he described the medical history of his injury in December 1980. [The doctor] found [the employee's] complaints to be consistent with his description of the December 1979 injury. [A second doctor] also referred only to the December 1979 injury in his report.

*Id.* at 871–72. On appeal, we held that a reasonable mind might rely on this evidence to conclude that the employee's 1980 injury did not cause his subsequent disability. *Id.* at 870–72 (rejecting the employee's claim that the employer was required to produce expert medical evidence to rebut the presumption of compensability). "This evidence, if relied upon, tends to show that the October 1980 incident did not change the type of work [the employee] could do, or aggravate his original injury." *Id.* at 872. We thus concluded that the circumstantial evidence presented by the employer, coupled with the employee's own statements concerning his back condition, created a reasonable inference that the 1980 injury was merely a "flare-up" of the employee's earlier injury. *Id.*

Under *Wolfer* and *Turner,* Osborne has failed to present sufficient affirmative evi-

dence to rule out the work-relatedness of Jordan's injury. The sole evidence presented by Osborne to show that Jordan's disability was not related to his 1989 work injury was that (1) Jordan experienced sudden leg and lower back pain after playing basketball and moving furniture in February 1990, and (2) Jordan failed to mention his 1989 work injury on his medical intake forms when he subsequently sought medical attention for his back pain. This alone does not constitute substantial evidence that Jordan's back problem was not work-related; it is entirely reasonable for a layperson to associate the onset of sudden pain with his most recent physical activity. Furthermore, it is undisputed that Jordan told Dr. Ha about his 1989 injury when he first consulted him in March 1990. Cf. Wolfer, 693 P.2d at 871 (where the employee did not mention his second injury at all when he consulted a doctor about his back condition); Turner, 611 P.2d at 15 & n. 6 (where it was unclear from the doctor's medical records when the employee first told the doctor about the work-related injury). In fact, none of the doctors who examined Jordan and who were told of his injury at work were willing to rule it out as the initial source of his back trouble.[5] On this record, a reasonable mind could not conclude, based solely on Jordan's initial failure to cite his work injury on his medical intake forms, that his 1989 injury did not contribute to his 1990 disability. Neither the medical evidence nor the circumstances surrounding Jordan's two injuries support such a finding.

On appeal, Osborne places great emphasis on Jordan's lack of credibility. The first argument raised in Osborne's brief is that "[l]ying under oath is contrary to public policy." Osborne appears to argue that a claimant who has been proven not credible should not be entitled to the presumption of compensability. Osborne is essentially arguing for an oversimplification of the three-step analysis that applies in workers' compensation claims. As discussed above, the pre-

sumption only attaches once the claimant has established a "preliminary link" between the injury and the employment. If a claimant's testimony proved totally unreliable, this link would not be established. However, where there is corroborating evidence, as in this case, the link is clearly established.

Osborne also cites Resler v. Universal Services, 778 P.2d 1146 (Alaska 1989), for the proposition that a claimant's lack of credibility, coupled with other evidence, is sufficient to overcome the presumption. As Osborne correctly observes, "[t]he issue before this court is narrowed to how much additional evidence, in combination with the lack of credibility, is required to support the board's conclusion." An examination of the facts of Resler is instructive. Resler claimed that she injured her shoulder while working as a housekeeper. Id. at 1147. However, several doctors who performed diagnostic tests failed to find an objective basis for Resler's pain. Id. at 1148 & n. 1. The Board found that the medical reports and the testimony of the doctors, along with the depositions of Resler's co-workers, constituted substantial evidence to rebut the presumption that Resler's injury was work-related. Id. at 1150. This court affirmed the superior court's affirmance of the Board's decision. Id.

Jordan's case is distinguishable from Resler. There is no dispute that Jordan suffered an objectively measured injury. Furthermore, Jordan's supervisors, rather than disputing his claim of work-relatedness, provided corroborating evidence that he was injured while working for Osborne. Thus, Osborne has failed to produce "some evidence," in addition to the employee's lack of credibility, to rebut the presumption of compensability under the Resler test.

## IV.  CONCLUSION

Since Osborne has failed to produce substantial evidence to rule out work-relatedness, Osborne has failed to rebut the pre-

---

5.  Osborne emphasizes that the doctors' opinions regarding causation are only as reliable as the information received from Jordan. However, both Jordan's project supervisor and Jordan's father observed Jordan in pain after he moved the compactor at the Fort Wainwright project.

Because the fact of Jordan's 1989 injury was corroborated by this testimony, Osborne must produce substantial evidence ruling out that episode as the source of Jordan's herniated discs. See Turner, 611 P.2d at 14–15.

sumption of compensability. Therefore, we AFFIRM the decision of the superior court, which reversed the Board.[6]

EASTAUGH, J., with whom COMPTON, J., joins, dissents.

EASTAUGH, Justice, with whom COMPTON, Justice, joins dissenting.

The majority opinion concludes that Osborne Construction Co. failed to present sufficient affirmative evidence to rule out the work-relatedness of Jordan's injury and therefore failed to overcome the presumption of compensability. I respectfully dissent because Jordan's descriptions of how and when his radiating leg pain began, found in Jordan's medical records, constitute "affirmative evidence" under *Veco, Inc. v. Wolfer,* 693 P.2d 865, 872 (Alaska 1985).

A majority of the Board concluded that "[t]he available medical records of the employee's visits to the chiropractors and to Dr. Ha on March 19, 1990 all implicitly indicate that this back condition arose by the employee either playing basketball or moving furniture." Thus, the Board found the medical records to be substantial affirmative evidence that Jordan's condition was not work-related. It therefore concluded that Osborne had overcome the presumption of compensability. I agree with that conclusion.

Jordan experienced back pain in August 1989 while working for Osborne. He did not report the injury when it occurred, seek immediate medical treatment, or lose any time from work.

In March 1990 Jordan visited Dr. Young Ha complaining of a sudden onset of radiating pain in his left leg; that pain had started about a week earlier, shortly after he played basketball and moved furniture. He had recently moved from one residence to another. Dr. Ha's notes of the visit state, "This pain started about eight days ago after playing basketball and moving furniture about an hour although he does not recall any specific incident in which he had any pain although he did feel some discomfort in his lower back." The notes further state, "Late October [sic] 1989 he had back pain after pulling a plate compactor up from a slope at his work for Osborne Construction Company. However *he did not have any leg pain* and he did not lose any time from his work." (Emphasis added.)

Jordan did not return to Dr. Ha, but in April 1990 visited Dr. G.F. Palmer, D.C., for "pains through lower back to calf." Jordan's wife filled out the new patient preliminary information questionnaire, which Jordan signed. Under "Patient Employed By:" Jordan named Osborne. Under "Date of Accident/Beginning of Illness," Jordan wrote, "Beginning of March." In response to "How did it occur? __ Auto Collision __ On-the-job __ Other," Jordan wrote next to "Other," "Carrying furniture." After "PLEASE INDICATE WHICH KIND OF INSURANCE YOU HAVE: GROUP INSURANCE __ BLUE CROSS/BLUE SHIELD __ WORKER'S COMPENSATION __ AUTO INSURANCE __ MEDICARE __ PERSONAL INJURY __ OTHER INSURANCE __," Jordan checked "OTHER INSURANCE."

Later that month, Jordan visited the Spaulding Chiropractic Clinic, whose new patient information form reveals similar information. Jordan filled out the two-page information form. Under "WHAT ARE YOUR MAIN PROBLEMS (AREAS OF PAIN)?— how long?" Jordan wrote "lower back and left leg—5 weeks." Under "HAVE YOU HAD SIMILAR ACCIDENTS/INJURIES?" Jordan checked "NO." Under "PLEASE DESCRIBE THE CIRCUMSTANCES," Jordan wrote "moving furniture." Jordan stated that the "DATE OF THE ACCIDENT OR BEGINNING OF ILLNESS" was "3–13–90." Under "IF ACCIDENT, HOW DID IT OCCUR? __ AUTO __ ON THE JOB __ OTHER," Jordan checked "OTHER." Under what type of insurance was the case covered by, Jordan selected "GROUP INSURANCE" and "PERSONAL INJURY," rather than "WORKER'S COMPENSATION." He also reported that he was employed by "Osborn [sic] Const."

---

6. Having concluded that Osborne failed to rebut the presumption, we need not consider the next step in the workers' compensation analysis—the weighing of the evidence to determine if the claimant has proved all elements by a preponderance of the evidence.

In May Jordan saw another orthopedic surgeon, Dr. Edwin Lindig, who noted in Jordan's medical history that his condition arose after "moving in February."

The Jordans' oral and written accounts memorialized in the records of Drs. Ha, Palmer, and Spaulding do not mention any relationship between his August 1989 injury while employed by Osborne and the radiating pain that led him to seek treatment in 1990. Instead, they affirmatively deny a work-relationship and offer a non-employment explanation for how his radiating pain originated. A reasonable person could fairly find from that evidence that in 1990 Jordan suffered a new medical problem which was different from or more severe than the problem he experienced in 1989 as a result of his employment. Further, the current manifestation of his medical problem—herniations of three lumbar discs—was radiating pain, instead of the non-radiating pain he told Dr. Ha in 1990 he had experienced on the job six months before.

The medical history memorialized in these accounts is relevant evidence adequate to support a reasonable conclusion that the radiating pain Jordan experienced in March 1990 originated in recent, non-work-related activities. Substantial evidence is "such relevant evidence as a reasonable mind *might* accept as adequate to support a conclusion." *Gillispie v. B & B Foodland*, 881 P.2d 1106, 1109 (Alaska 1994) (emphasis added). Osborne's presentation of Jordan's medical accounts was therefore sufficient to rebut the presumption of compensability. The Board permissibly relied on substantial evidence which affirmatively and permissibly supports a non-employment explanation. Thus, I disagree with the majority's conclusion that under *Wolfer*, Osborne failed to present suffi-cient affirmative evidence to eliminate the work-relatedness of Jordan's injury. *See Wolfer*, 693 P.2d at 872 (concluding that the employer rebutted the presumption of compensability by presenting circumstantial evidence, coupled with the employee's statements regarding his condition, to create a "reasonable inference" that the new injury was "merely a flare-up" of the earlier injury).

Although the medical history was insufficient to compel a conclusion that Jordan's radiating pain was not related to his work, it was sufficient to overcome the presumption. Additionally, assuming *Alaska Pacific Assurance Co. v. Turner*, 611 P.2d 12 (Alaska 1980), applies, this evidence is also sufficient to permit a conclusion that the work-related injury was not a "substantial factor" contributing to the condition noted in March 1990. *Id.* at 14.

Having concluded that these medical records were sufficient to rebut the presumption, I would proceed to review the third stage of the Board's analysis, in which it weighed all the evidence and concluded that Jordan had not proven his claim by a preponderance of the evidence.[1] Because substantial evidence supports that conclusion of the Board, I would reverse and remand with instructions to reinstate the Board's decision and order rejecting Jordan's claim. *See Resler v. Universal Services, Inc.*, 778 P.2d 1146, 1150 (Alaska 1989) (upholding Board's determination that employee failed to prove claim by a preponderance of the evidence, considering that employee lacked credibility coupled with witnesses' testimony).

1. The Board denied workers' compensation benefits to Jordan, finding that the preponderance of the evidence indicates that Jordan's condition "arose from incidents subsequent to his employment, and not in the course and scope of his work." The Board found Jordan's testimony not credible. It was "troubled by the inconsistency of the employee's history over time, the contradictions between his testimony and that of other witnesses, and by his admitted misrepresentation related to unemployment insurance." Therefore, the Board concluded that it could not rely upon the later medical opinions which were based on Jordan's "self-serving version of the events and symptoms." Instead, the Board found Jordan's initial version of his history, as reflected in the first medical reports, to be more credible.

"The [B]oard has the sole power to determine the credibility of a witness. A finding by the [B]oard concerning the weight to be accorded a witness's testimony, including medical testimony and reports, is conclusive even if the evidence is conflicting or susceptible to contrary conclusions." AS 23.30.122.